Edward M. **KREMPEL**

v.

The **PRAIRIE ISLAND INDIAN COMMU-NITY**, a/k/a Prairie Island Sioux Community, a/k/a Prairie Island Sioux Community Reservation, a/k/a Prairie Island Community, a/k/a Prairie Island Indian Community Reservation; d/b/a Treasure Island Casino & Bingo; Ann Burr, a/k/a Anne White, a/k/a Anne Red Elk, an individual.

No. 4–94–CV–568.

United States District Court, D. Minnesota, Third Division.

June 9, 1995.

Frank Vogl, Sarah Crippen Madison, Michael H. Pink, Best & Flanagan, Minneapolis, MN, for Edward M. Krempel.

Daniel A. Haws, Murnane Conlin White & Brandt, St. Paul, MN, for Prairie Island Indian Community.

Richard Wynn Johonson, Red Wing, MN, for Anne Burr.

## ORDER

ROSENBAUM, District Judge.

Plaintiff brought this action against the defendants, The Prairie Island Indian Community ("the Community") and Anne Burr, for alleged acts of discrimination. At the time suit was commenced, no tribal court existed. Since that time, a tribal court has been established. The Community asserts that its sovereign rights require plaintiff to first seek relief in the recently-established tribal court before pursuing his claims in the courts of the United States. Accordingly, the Community moves to dismiss this action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Plaintiff opposes the motion, arguing that tribal court exhaustion is not required. The Court heard oral argument on March 3, 1995. For the reasons set forth below, the Community's motion to dismiss is granted.

## I. *Facts*

The plaintiff, Edward Krempel, began his employment at the Treasure Island Casino (the "Casino"), a gambling establishment operated by the Community, as a blackjack dealer. He was subsequently promoted to the position of Assistant Supervisor in the Casino's pull tab department. Mr. Krempel claims to have been sexually harassed and defamed by defendant Anne Burr, his former supervisor.

The Community is a Minnesota Indian tribe recognized by the U.S. Department of the Interior. The Community has established a constitution, adopted by-laws, and been incorporated. The parties dispute whether the Casino is operated by the Community in its sovereign capacity or under the tribe's corporate charter.[2]

On June 8, 1994, plaintiff, a Wisconsin resident, filed his complaint in the Goodhue County District Court against defendant Burr, a Minnesota resident, and the Community alleging discrimination on the basis of sex and sexual orientation under the Minnesota Human Rights Act, Minn.Stat. § 363.03, Subd. 1(2)(c), defamation, and promissory estoppel. On June 29, 1994, the defendants removed the case to this Court, pursuant to 28 U.S.C. §§ 1441 and 1446. Although the Community had begun the process of developing a judicial system in 1992, its judicial system was not fully operational at the time of removal.[3]

On July 14, 1994, 36 days after service of the Complaint, and 15 days after the case was removed to this Court, the Community's Tribal Council entered into a contract with the Bluedog Law Firm to provide judges for the tribal court. The tribal court became fully operational on August 31, 1994. On November 10, 1994, this Court stayed discovery pending resolution of the Community's motion to dismiss. The issue before the Court is whether plaintiff must exhaust tribal

---

1. Initially, the Community also asserted that the matter should be dismissed based on tribal sovereign immunity. However, at oral argument, the Community abandoned reliance on this contention.

2. This question need not be resolved at this time because the issue of sovereign immunity is not before the Court.

3. The Community's judicial code was approved by the Department of Interiors' Bureau of Indian Affairs on November 16, 1993.

court remedies prior to seeking relief in this Court, even though the tribal court was not fully operational at the time this action was commenced.[4] The Court's jurisdiction is premised upon 28 U.S.C. § 1332(a)(2).

## II. *Discussion*

■ Notwithstanding the United States Supreme Court's recognition of the federal government's longstanding policy of encouraging tribal self-government, *see Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 14, 107 S.Ct. 971, 975, 94 L.Ed.2d 10 (1987), there appears to be no published authority precisely touching on the question before the Court. In *Iowa Mutual*, the Supreme Court discussed the duty of federal courts to recognize tribal courts. The policy of tribal court recognition "reflects the fact that Indian Tribes retain 'attributes of sovereignty over both their members and their territory.'" *Id.* (quoting *U.S. v. Mazurie*, 419 U.S. 544, 557, 95 S.Ct. 710, 717, 42 L.Ed.2d 706 (1975)). The Supreme Court also recognized that, "[t]ribal courts play a vital role in tribal self-government and the Federal Government has consistently encouraged their development." *Id.* at 14–15, 107 S.Ct. at 975 (citations omitted). Further, the Court noted that:

> Regardless of the basis for jurisdiction, the federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court a full opportunity to determine its own jurisdiction. In diversity cases, as well as federal question cases, unconditional access to the federal forum would place it in direct competition with the tribal courts, thereby impairing the latter's authority over reservation affairs.

*Id.* at 16, 107 S.Ct. at 976 (quoting *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 857, 105 S.Ct. 2447, 2454, 85 L.Ed.2d 818 (1985)).

This federal policy of promoting tribal self-government also encompasses promoting the development of the tribal court system. *Id.* at 16–17, 107 S.Ct. at 976–77.

With this guidance in mind, and in the interest of judicial economy, the Court is inclined to stay its hand in favor of the fledgling Prairie Island tribal court. In this Court's view, "... the orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed." *See National Farmers Union*, 471 U.S. at 856, 105 S.Ct. at 2454. Accordingly, the Court determines that this action should be dismissed in order to allow plaintiff to pursue tribal court remedies.

### A. *Development of Tribal Courts*

Although the tribal court was not fully functional at the time the Complaint was filed, the Court does not find this factor to be dispositive in determining the issue of tribal court exhaustion. The Community has taken the first steps in the development of its tribal court system by adopting a judicial code, approving a tribal court, and providing judges to staff the court. In addition, the tribal court has declared itself to be fully operational. All of these factors weigh in favor of the Court staying its hand in this matter pending tribal court exhaustion. *See Iowa Mutual*, 480 U.S. at 16–17, 107 S.Ct. at 976–77 (1987).

### B. *Judicial Economy*

Plaintiff argues that requiring him to exhaust tribal court remedies will not ease this Court's burden because the tribal court's decisions on the issues in this case, including sovereign immunity, may be appealed to this Court. The Court is unpersuaded by plaintiff's argument. The tribal court's consideration of the claims raised in this case may resolve disputed legal and factual issues, such as the capacity in which the Community operates the Casino and whether the Community has waived sovereign immunity. *See National Farmers Union*, 471 U.S. at 857–58, 105 S.Ct. at 2454. The resolution of such issues will significantly aid this Court in its determination of the claims presented in this action in the event the decision of the tribal

---

4. The parties' initial briefs did not fully address this question. At the request of the Court, the parties submitted supplemental memoranda discussing the issue.

court is appealed. Therefore, exhaustion of tribal court remedies will, in fact, promote the interests of judicial economy.

Plaintiff also argues that even today, the tribal court is not fully operational and, thus, there is no forum in which to assert his claims. In support of this argument, plaintiff relies on a June 14, 1994, letter from the Bureau of Indian Affairs ("BIA") calling for minor changes and clarifications before the BIA grants final approval of the Community's judicial code. The Court finds plaintiff's position to be unavailing. The mere fact that a tribal court may be inexperienced or in need of minor changes does not militate against tribal court exhaustion. In fact, the Supreme Court has held that the alleged incompetence of tribal courts is not among the exceptions to the exhaustion requirement and would be contrary to the congressional policy of promoting the development of tribal courts. *Iowa Mutual*, 480 U.S. at 19, 107 S.Ct. at 978.

■ Plaintiff next attempts to distinguish the exhaustion requirement set forth in *Iowa Mutual* and *National Farmers Union* from the present action by suggesting that the Supreme Court required exhaustion of tribal court remedies in those cases because of the existence of parallel actions in both tribal and federal court. The Court does not agree. In *Duncan Energy Co. v. Three Affiliated Tribes of Ft. Berthold Reservation*, 27 F.3d 1294 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 779, 130 L.Ed.2d 673 (1995), the Eighth Circuit Court of Appeals reversed a district court and directed the case to the tribal court, even though there was no simultaneous proceeding in the tribal court. *Id.* at 1301. Thus, the Court determines that exhaustion is required even when no tribal court action has been commenced.

Plaintiff further asserts that the case need not be heard first in tribal court because there are no issues of tribal law. In support of this argument, plaintiff relies on *Myrick v. Devils Lake Sioux Mfg. Corp.*, 718 F.Supp. 753 (D.N.D.1989). In *Myrick*, the plaintiff sued a corporation which was owned, in part, by an Indian tribe. The tribe itself was not a party to the lawsuit. Moreover, there was no attack or challenge to the jurisdiction of

the tribal court. *Id.* at 755. By contrast, this case involves claims of wrongful conduct by a Casino employee on tribal property. Because the conduct of tribal employees and the operation of the Casino are issues which clearly implicate tribal law, the tribal court is the proper forum for plaintiff to first raise his claims.

Plaintiff also relies on *Nenana Fuel Co., Inc. v. Native Village of Venetie*, 834 P.2d 1229 (Alaska 1992) for the proposition that exhaustion is not required. His reliance is misplaced. In *Nenana*, the Alaska Supreme Court concluded that tribal court exhaustion was not required because the evidence established that the parties expressly contemplated an action in Alaska's courts rather than the tribal courts. *Id.* at 1233. That court further noted that tribal court exhaustion was not required because "there [was] no showing that [the tribe had] a functioning tribal court, and because there [was] no showing of what the jurisdiction of such an entity might be." *Id.* The *Nenana* case is inapposite to the issue presently before the Court. Here, because the action is based in tort, rather than contract, the parties had no occasion to agree upon a forum in the event of a dispute. Further, unlike *Nenana*, in the present case, a legitimate tribal court was being formed at the time of the alleged misconduct and is now fully operational. Therefore, the reasoning in *Nenana* does not preclude exhaustion of tribal remedies.

Finally, the Court recognizes the anomaly of referring this case to a court which arguably post-dates the contested event. However, this bare fact cannot be dispositive. This nation's policies regarding tribal sovereignty and the development of tribal courts tip the scales. Here, the Community had called its court into existence prior to the events in question. While the last bricks were not laid, the foundation was firm, and the final structure stands today. A healthy respect for the development of this essential tribal resource counsels in favor of asking the tribal court to address its own jurisdiction and compels this Court to stay its hand. It is only by reposing trust in these tribal institutions that they can grow and flourish. The Court is confident that, given the opportunity

to do so, the tribal court will more than competently serve the interests of its members.

### III. *Conclusion*

Accordingly, based on the files, records, and proceedings herein, and for the reasons set forth above, IT IS ORDERED that:

The Community's motion to dismiss is granted. This matter is dismissed without prejudice.